IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:21-CR-3129 |
| vs. | |
| GEORGE L. LIAKOS, | TENTATIVE FINDINGS |
| Defendant. | |

The Court has received the revised presentence investigation report and addendum in this case. The defendant has objected (filing 66) to the presentence report.

IT IS ORDERED:

1.  The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005) and subsequent cases. In this regard, the Court gives notice that, unless otherwise ordered, it will:

    (a) give the advisory Guidelines respectful consideration within the context of each individual case and will filter the Guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the Guidelines any particular or "substantial" weight;

    (b) resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

    (c) impose upon the United States the burden of proof on all Guidelines enhancements;

(d) impose upon the defendant the burden of proof on all Guidelines mitigators;

(e) depart from the advisory Guidelines, if appropriate, using pre-*Booker* departure theory; and

(f) in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason justifying a sentence different than that called for by application of the advisory Guidelines, again without affording the Guidelines any particular or "substantial" weight.

2. The defendant has objected to the presentence report. Filing 66. Specifically, the defendant disputes the amount of restitution and whether he made false statements in bankruptcy proceedings.[1]

*Restitution and Loss Calculation*[2]

The defendant pled guilty to one count of bank fraud. *See* filing 51. He defaulted on four promissory notes, procured by fraud, issued by Great

---

[1] The defendant also denies a charge of issuing a bad check in Morrill County, but no criminal history points were assessed for this conduct. Filing 66 at 2. And the defendant objects to the prosecutor's version of the offense, which the probation officer may not amend. *See* filing 66 at 1. Because neither impact the sentencing guideline computation, the Court sees no reason to address these objections.

[2] Although the gross amounts of loss for sentencing purposes and loss for restitution purposes are often calculated in the same manner, the two determinations serve different purposes and thus *may* differ depending on the relevant facts. *United States v. Lange*, 592 F.3d 902, 907 (8th Cir. 2010). But neither party has directed the Court to any basis for distinguishing those calculations in this case.

Western Bank.³ *See* filing 1 at 4. As security for those loans, the defendant signed a deed of trust in favor of the bank for real estate located in Bayard, Nebraska. A different financial institution, Prudential, had the first priority lien on the Bayard property, in the amount of $3,903,984.32. Filing 70-2 at 5. The defendant also used machinery, equipment, and livestock as collateral. *See* filing 66 at 3.

The government has the burden to prove actual loss, for fraud purposes, by the preponderance of the evidence. *United States v. Markert*, 774 F.3d 922, 925 (8th Cir. 2014). Similarly, the government must prove restitution is warranted by a preponderance of the evidence, by showing the actual, provable loss. 18 U.S.C. § 3664(e); *United States v. Martinez*, 690 F.3d 1083, 1088 (8th Cir. 2012). Any of the fraudulently obtained funds that were actually recovered by Great Western Bank from its later sale of collateral should be offset against the loss calculation. U.S.S.G. § 2B1.1 cmt. n.3(E)(ii); *see also Robers v. United States*, 572 U.S. 639, 640-41 (2014); *United States v. Oladimeji*, 463 F.3d 152, 160 (2d Cir. 2006); *United States v. Shepard*, 269 F.3d 884, 887-88 (7th Cir. 2001).

While the government bears the burden of demonstrating the amount of the loss sustained as a result of the offense, the defendant bears the burden of establishing entitlement to an offset against that loss. *United*

---

³ Count I of the indictment, to which the defendant pled guilty, includes three loans, executed on June 2, 2017. The original principal amounts of these loans were: $8,500,000 for a revolving line of credit; $1,858,000 for a machinery and equipment loan; and $850,000 for a livestock loan. *See* filing 1 at 4; filing 70-2 at 2. The defendant also obtained a forbearance agreement with an additional revolving line of credit with an original principal amount of $336,000, executed on November 26, 2018. Filing 1 at 4; *see also* filing 70-4 at 73.

3

*States v. Miell*, 744 F. Supp. 2d 961, 965 n.8 (N.D. Iowa 2010); *see also United States v. Pugh,* 445 F.3d 1066, 1068 (8th Cir. 2006) (burden is on defendant to show payment of restitution debt).

The defendant objects to the government's proposed restitution amount. The government asserts that the defendant should be held responsible for $5,119,867.09 in loss for both loss calculation and restitution purposes. PSR ¶ 28. That amount is derived from a civil judgment from the District Court of Morrill County, Nebraska, in which the court granted summary judgment in favor of Great Western Bank. *See* filing 70-2. The defendant, on the contrary—as far as this Court can tell—appears to be asserting that the actual restitution amount should be $634,807.09. *See* filing 66 at 3.

According to the government, the Morrill County civil suit was based on the same facts as this criminal case. Filing 70-1. The government argues that the doctrine of collateral estoppel, or issue preclusion, prevents the defendant from contesting the restitution amount in the PSR. Filing 68 at 2. But even if the elements of collateral estoppel are satisfied here,[4] nonmutual collateral estoppel is disfavored in criminal cases due to the

---

[4] Issue preclusion requires: (1) the party sought to be precluded must have been a party in the prior action, (2) the issue sought to be precluded must be the same as the issue in the prior action, (3) the issue must have been actually litigated in the prior action, (4) the issue must have been determined by a valid final judgment, and (5) the determination in the prior action must have been essential to the prior judgment. *Sandy Lake Band of Miss. Chippewa v. United States,* 714 F.3d 1098, 1102-03 (8th Cir. 2013) (quoting *Robinette v. Jones,* 476 F.3d 585, 589 (8th Cir. 2008)). The government asserts all the elements are satisfied. Filing 68 at 2.

4

different rights and interests of the parties in a civil case compared to those in a criminal case. *Honken v. United States*, 42 F. Supp. 3d 937, 1005-06 (N.D. Iowa 2013); *Pinkney v. Keane*, 920 F.2d 1090, 1096-97 (2d Cir. 1990); *Standefer v. United States*, 447 U.S. 10, 24 (1980). "Given the importance of what is being decided during a criminal case, the public interest in reaching an accurate and just result outweighs the efficiency concern that might otherwise favor application of the doctrine of collateral estoppel." *Honken*, 42 F. Supp. 3d at 1006. The defendant will not be precluded from contesting the restitution amount. However, while not dispositive, the civil judgment is *certainly probative* of the restitution amount, and the government may use the Morrill County court order as evidence of the loss calculation for this criminal offense.

The Morrill County court calculated the amount owed by taking $7,540,822.77,[5] the total debt owed (calculated by totaling the principal balance and interest accrued on the four promissory notes as of August 18, 2020 (filing 70-2 at 5-6)), and subtracting $2,421,015.68 (the difference between the bank's fair market appraisal of the Bayard property, $6,325,000, and the amount of the Prudential lien, $3,903,984.32), for a total of $5,119,867.09. Filing 70-2 at 6.

The defendant asserts that the bank's unreasonable disposition of the collateral caused the loss because the value of the collateral "far exceeded the total amount of the debt." *See* filing 66 at 3-4. The defendant asserts

---

[5] The indictment and the PSR indicate that the "approximate loss," prior to any offsetting credits, is $7,608,793.55. Filing 1 at 4; PSR ¶ 7. It is unclear what caused the discrepancy between the indictment and the Morrill County court's calculation of the loss before any reductions.

the fair market value of the property was $10,400,000 at the time of its disposition, and the amount of restitution should be offset by this figure (presumably after accounting for the Prudential lien). The defendant requests additional credits for the disposition of other chattels, including "not less than $350,000 in machinery and equipment [and] $60,000 cash value in a life insurance policy." Filing 66 at 3.

The defendant appears to argue that the restitution should be calculated by taking the total debt owed, $7,540,882.77 (the defendant does not appear to dispute the total debt owed as described in the Morrill County court order), minus $6,496,015.68 (the amount the *defendant's* fair market appraisal of the collateral exceeded the Prudential lien), less $350,000 (the value of machinery and equipment used as collateral), less $60,000 (the value of the life insurance policy assigned to the bank), for a total restitution amount of $634,807.09. *See* filing 66 at 3.

The government asserts the value of the machinery and equipment amounted to $142,801.50 for the sale of vehicles and $1,143,713.01 in other collateral, and that those proceeds were applied to the loans on which the defendant defaulted—meaning that the total debt owed, $7,540,882.77, has already accounted for the value of that collateral. Filing 68 at 4. And the government asserts that while the defendant assigned his life insurance policy to the bank, the bank has not received any funds. Filing 68 at 4. The government also disputes the value of the life insurance policy. Filing 68 at 4.

The defendant points to U.S.S.G. § 2B1.1 cmt. n.3(C) to argue that the bank's loss should be reduced by the fair market value of the property at the time of sentencing. Filing 66 at 3. But that guidance is not relevant

6

here. The Court may estimate a loss caused by a defendant by using the "fair market value of the property unlawfully taken, copied, or destroyed." But here, the defendant did not unlawfully take property. Rather, the defendant's property was collateral for a loan. "In a case involving collateral pledged," the loss calculation will be reduced by "the amount the victim has recovered at the time of sentencing for disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing." § 2B1.1 cmt. n.3(E)(ii); *see also United States v. Alexander,* 679 F.3d 721, 730 (8th Cir. 2012).

***If*** the defendant can prove the bank disposed of the collateral in a commercially unreasonable manner, this might justify reducing the loss amount by the fair market value of the property rather than the amount recovered by Great Western Bank. *See Alexander*, 679 F.3d at 730. Notably, the government's restitution calculation has already been reduced by a fair market valuation of the property. The government is relying on the Morrill County court's calculation, which used an appraisal value of the Bayard property rather than the amount the bank actually recovered from the disposition of the collateral.[6] It appears that

---

[6] Based on the facts in the Morrill County court order, the bank purchased the Bayard property at its own foreclosure sale for $1,725,166. Filing 70-2 at 5. When accounting for the Prudential lien, the bank effectively purchased the Bayard property for $5,629,150.32, and has since sold off parts of the Bayard property. The bank has realized $5,188,908 in gross sale proceeds as of January 29, 2021. *See* filing 70-2 at 6. The bank agreed, for the purposes of its summary judgment motion, that the $6,325,000 appraisal represented the Bayard property's value at the date of the foreclosure sale. Filing 70-2 at 6.

7

the defendant simply disagrees with that valuation, and he might have his own.

As described above, the government must prove the amount of restitution owed. The defendant bears the burden of showing any amount by which the restitution should be reduced.

Accordingly, the Court will resolve the restitution issue at sentencing, based on the government's evidence of what amount is owed and whether the defendant can prove certain reductions are justified.

*False Statements During Bankruptcy Proceeding*

The defendant is alleged to have misrepresented the number of cattle he owned during a Chapter 11 Bankruptcy proceeding, warranting a two-level sentencing enhancement under U.S.S.G. § 2B1.1(b)(9)(B). *See* PSR ¶¶ 29, 37. The defendant denies the alleged misrepresentation.

When a defendant disputes material facts in the PSR, it is the government's burden to prove the applicability of an enhancement by a preponderance of the evidence. *E.g., United States v. Mitchell,* 825 F.3d 422, 425 (8th Cir. 2016).

The Court will resolve this issue at sentencing.

3. Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the preceding paragraph, the parties are notified that the Court's tentative findings are that the presentence report is correct in all respects.

8

4.  If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3) business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are required, giving due regard to the local rules of practice governing the submission of evidentiary materials. If an evidentiary hearing is requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.

5.  Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the presentence report may be relied upon by the Court without more.

6.  Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 27th day of September, 2023.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
Senior United States District Judge

9